## WALTER D. CLINKSCALES v. STATE.

No. A-5703.   Opinion Filed May 21, 1927.
(256 Pac. 66.)

P. Mounts and W. H. Hussey, for plaintiff in error.

Edwin Dabney, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DAVENPORT, J.   The plaintiff in error, hereinafter called the defendant, was informed against in the county court of Tillman county, Okla., on a charge of manufacturing a still.   The information, in part, charges as follows:

"That the said Walter D. Clinkscales, in the county and state aforesaid, did then and there being unlawfully, knowingly, and willfully manufacture a still, without first having qualified under the laws in such cases made and provided and against the peace and dignity of the state."

To the information, the defendant filed a demurrer, which was by the court considered and overruled, and the defendant duly excepted.   A jury was impaneled, and trial had; the jury finding the defendant guilty and

leaving the punishment to be fixed by the court. Motion for a new trial was filed, considered, and overruled, and the defendant duly excepted. Motion in arrest of judgment was also filed and overruled by the court, and the defendant duly excepted. Defendant was sentenced to pay a fine of $300 and to be confined in the jail of Tillman county for a term of 90 days. To reverse the judgment and sentence, defendant appealed to this court.

The defendant has assigned twenty-two errors alleged to have been committed by the trial court. After a careful examination of the record, we only deem it necessary to consider assignments 6, 8, and 13, which are as follows:

"(6) That the verdict of the jury is not sustained by sufficient evidence."

"(8) That the verdict of the jury is contrary to the law."

"(13) Error of the court in overruling the demurrer to the information filed in this case."

In order to properly consider the assignments above set out it is deemed necessary to set out in this opinion a brief summary of the evidence.

Tom Gabbert was called as a witness by the state, and stated:

"That he was a constable of the Grandfield precinct. That he was acquainted with Walter D. Clinkscales; had known him for about six months. Clinkscales lived about 7½ miles north of Grandfield. He visited the Clinkscales home on the 6th day of March, 1925. Said he went there with a search warrant. It was about 4 or 5 o'clock in the afternoon, and searched the premises. He found Mr. Clinkscales in his garage making a copper distill, or 'what I would

call it. It was a sheet of copper 24 inches wide, and box made; it was completed all but the soldering of the top on. He was working on it and had his soldering iron at work. One of the ends was open. The garage was open when we went there, and Mr. Clinkscales was working, and what he was making was open to our view. We left the distill and went back to Grandfield. We never did take charge of that distill by virtue of any search warrant or anything else. Wade Crane and some others were with me. The residence of Mr. Clinkscales is a two-room house facing the east, a large room and a shed room on the west. The garage is back of the west of the house, possibly 25 or 30 steps, or something like that. The garage is next to the barn. There is a granary on the west end of the garage, and in the east end they keep a car in it. When we went there that evening Mr. Clinkscales was in the garage and the doors were open, and we walked into the garage and had a conversation with him. All three of us went in. He made no objection to any of us coming in. He was working on this copper, and the blow torch was in use. He said he had been intending to make that wash boiler for some time for his wife. He said something like that. The copper that I have described and boiler was all I saw at that time. There was some copper pipe there. We did not molest the material or do anything about it at that time. We returned after dark. We saw Mr. Clinkscales when we went back.' On cross-examination, Mr. Gabbert stated that Mr. Clinkscales walked around with them a while, and finally we went away. After dark we went back to the house and got this boiler he was making. The shape this boiler was in at the time it could not be used as a still. It would have to have more done on it to operate as a still.' "

Wade Crane and W. F. Gabbert were called as witnesses for the state, and testified, in substance, the same facts as Tom Gabbert testified to.

The defendant also testified. He stated:

He was a farmer, and that the parties came to his house and told him they had a search warrant and

handed it to him, and he handed it back to them. "I was working on a boiler in the garage shed. I was making it to use as a wash boiler. It was the wash boiler that they got at that time. This is the only one I made. The top found there was to go on a brooder I was making. I was expecting to use this on the place. I had no worm of any kind, nor did I have any condenser. The copper I had was for the purpose of making a wash boiler and other things I was making for the brooder."

The provision of the statute upon which the information is based is section 4, p. 44, of the Special Session Laws 1923-24. That part of said section applicable to this case reads as follows:

"It shall be unlawful for any person or * * * persons to manufacture any still worm or still, or substitute therefor, and usable as such, without first having qualified under the laws of the United States as a manufacturer and distributor of stills."

The defendant demurred to the information; the first paragraph of said demurrer being as follows:

"That said information fails to allege facts sufficient to charge any offense against this defendant under the laws of the state of Oklahoma."

From an examination of the statute, it is clearly shown that the information does not charge in the language of the statute or its equivalent, charging only that the defendant manufactured a still, and omitting the words, "and usable as such." For failure to include the words, "and usable as such," in the information, the information is bad, and the demurrer of the defendant should have been sustained.

A careful examination of the evidence in the record fails to show sufficient facts to justify the verdict and sentence of the court. Where there is evidence to support the verdict, the court will not pass upon the

weight and sufficiency in order to determine whether the defendant is guilty as charged, but we hold that there must be evidence tending to support the essential allegations of the information. In this case there is no evidence whatsoever of the defendant's manufacturing a still.

The case is reversed and remanded, with directions to dismiss.

DOYLE, P. J., and EDWARDS, J., concur.